**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **DIAMOND WILSON, KARLTON BROCKMAN, NATHAN COOPER, and LORENZO HICKS** *Plaintiffs* **v.** **RHODE ISLAND DEPARTMENT OF CORRECTIONS; WAYNE SALISBURY, Director, Rhode Island Department of Corrections; LYNNE CORRY, Warden, The High Security Center Facility; JASON MASIELLO, Deputy Warden, The High Security Center Facility; and BARRY WEINER, Assistant Director for Rehabilitative Services** *Defendants.* | **C.A. No.** |

**VERIFIED COMPLAINT**

**PRELIMINARY STATEMENT**

1.    This case addresses the deprivation of the right to the free exercise of religion of Plaintiffs Diamond Wilson, Karlton Brockman, Nathan Cooper, and Lorenzo Hicks, in violation of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et seq. ("RLUIPA"), as well as the deprivation of the equal protection of the laws, in violation of the Fourteenth Amendment.

2.    Plaintiffs are Muslims incarcerated by the Rhode Island Department of Corrections ("RIDOC") at the High Security Center ("HSC") in Cranston, Rhode Island. Despite repeated requests by Plaintiffs, RIDOC and RIDOC officials have prevented Plaintiffs from practicing their

religion, including the ability to observe Ramadan, to engage in communal prayer, to meet with an imam, and to obtain needed religious items.

3.    These denials violate RLUIPA by imposing a substantial burden on Plaintiffs' religious exercise, and they are not the least restrictive means to achieve a compelling governmental interest.

4.    Defendants' actions also amount to discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment because Defendants allow Christians incarcerated in the HSC to have communal services and to regularly see Christian clergy, while denying these same rights to Plaintiffs and other Muslim inmates.

## JURISDICTION AND VENUE

5.    Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over Plaintiffs' claims that Defendants violated their rights under RLUIPA, 42 U.S.C. § 2000cc et seq., and that Defendants deprived them of the equal protection of the laws, in violation of the Fourteenth Amendment, enforceable under 42 U.S.C. § 1983.

6.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because all the events giving rise to these claims occurred in Cranston, Rhode Island.

## PARTIES

7.    Plaintiffs Diamond Wilson, Karlton Brockman, Nathan Cooper, and Lorenzo Hicks are Muslims who are incarcerated by RIDOC in the High Security Center ("HSC"), a facility in the Adult Correctional Institutions ("ACI"), in Cranston, Rhode Island, assigned to the Restorative Housing Program ("RHP").

8.    Plaintiff Wilson was assigned to HSC on August 23, 2023, and has been incarcerated in HSC since.

2

9.      Plaintiff Brockman has been incarcerated in the HSC since 2021.

10.     Plaintiff Cooper has been incarcerated in the HSC since approximately September 2023.

11.     Plaintiff Hicks has been incarcerated in the HSC since approximately 2020.

12.     Defendant RIDOC is a department of the State of Rhode Island, established to provide for the custody, care, discipline, training, treatment, and study of persons committed to state correctional institutions, pursuant to R.I. Gen. Laws § 42-56-1 et seq.

13.     Defendant Wayne Salisbury is the Director of RIDOC. In this position, Defendant Salisbury bears responsibility for the management, administration, and supervision of the Rhode Island prison system, pursuant to R.I. Gen. Laws § 42-56-10 et seq. As such, Defendant Salisbury is the supervising authority and commanding officer of the other individual Defendants and all RIDOC employees. Defendant Salisbury bears responsibility for creating, maintaining, and implementing RIDOC's policies to accommodate the free exercise of religion of all persons incarcerated by RIDOC.

14.     Defendant Lynne Corry is the Warden of the HSC. She bears responsibility for supervising all RIDOC employees in HSC and for implementing RIDOC's policies in the HSC.

15.     Defendant Jason Masiello is the Deputy Warden of the HSC. He is responsible for overseeing the day-to-day operations of the HSC and upholding institutional policies. He reports directly to the Warden and works closely with other administrative staff to achieve the facility's goals.

16.     Defendant Barry Weiner is RIDOC's Assistant Director for Rehabilitative Services. In that position, it is his responsibility "to coordinate and supervise all religious programs." 240-RICR-10-00-2 § 2.6.

3

17.     At all times relevant hereto, each Defendant acted under the color of state law. The individual Defendants are each sued in their official capacities.

### FACTS

### I.     PLAINTIFFS' SINCERE RELIGIOUS BELIEFS AND PRACTICES

18.     Plaintiffs are practicing Muslims who adhere to the tenets of Islam and seek to practice their religion.

19.     RIDOC recognizes each of the Plaintiffs to be Muslim, as each of the Plaintiffs is designated as Muslim in INFACTS, RIDOC's inmate database.

20.     Plaintiffs each became Muslim in the traditional manner by reciting the *Shahada*, a declaration of faith, in which an adherent states in front of at least two Muslim witnesses: "There is no god but Allah, and Muhammad is the Messenger of Allah."

21.     Plaintiff Wilson became Muslim in 2010, Plaintiff Cooper became Muslim in 2016, and Plaintiff Hicks became Muslim in 2017. Each has practiced Islam since.

22.     Plaintiff Brockman became Muslim many years ago is considered an emir, a Muslim elder who helps guide others in their faith.

23.     Plaintiffs have beliefs arising out of the Sunni Muslim sect. Accordingly, Plaintiffs believe in the five pillars of Islam: *Shahada,* a declaration of faith in Allah and his messenger Muhammad; *Salah*, the ritual prayer required of every Muslim five times a day; *Zakat*, the act of giving a portion of one's wealth to those in need; *Sawm*, the act of fasting during the holy month of Ramadan; and *Hajj*, the pilgrimage to Mecca required of every Muslim at least once in their lifetime if it is within their means.

## II.  RIDOC IMPOSES SUBSTANTIAL BURDENS ON PLAINTIFFS' EXERCISE OF RELIGION

24.     As practicing Muslims, Plaintiffs seek to engage in traditional Muslim religious practices, including observance of Ramadan, weekly communal prayer, meeting regularly with an imam, and obtaining and using traditional religious items, including a prayer rug and prayer cloth.

25.     Each of these practices is recognized to be a traditional Muslim practice. *See* United States Bureau of Prisons, *Islam Manual* at pp. 2-5, 14-15 (2017), https://www.bop.gov/foia/docs/islammanual.pdf.

26.     As set forth below, RIDOC prevents Plaintiffs from engaging in these traditional practices and thereby imposes substantial burdens on Plaintiffs' free exercise of religion.

### A.     RIDOC Has Prevented Plaintiffs and Other Muslims in HSC from Observing Ramadan

27.     For observant Muslims, Ramadan, the ninth month of the Muslim calendar, is a holy month of fasting, prayer, and community.

28.     During Ramadan, Muslims must refrain from eating food and drinking water during daylight hours. The practice of fasting during Ramadan is intended to encourage self-discipline, foster empathy for those less fortunate, purify the soul, and strengthen one's connection to Allah through heightened spirituality and devotion.

29.     To observe the fast of Ramadan, Muslims eat a pre-dawn meal called *suhoor* to prepare for the day's fasting period. Muslims break their fast after sunset and after reciting the *maghrib* prayer. Muslims break the fast at a festive meal called *iftar*, which is a communal event usually shared with friends and family to break the fast together.

5

30.    During last year's observance of Ramadan, which occurred from March 10 to April 9, 2024, RIDOC disrupted the ability of Plaintiffs and other Muslims in HSC to observe Ramadan in three distinct ways.

31.    *First*, RIDOC significantly reduced Plaintiffs' caloric intake during each day of Ramadan.

a.    Plaintiffs are entitled to adequate nutrition and calories during their observance of Ramadan.

b.    Other prisons accommodate observance of Ramadan by providing Muslims an additional meal in the morning or evening to make up for the daytime meal that they miss. For example, the Federal Bureau of Prisons requires that a bagged meal be provided to Muslims fasting during Ramadan that are equivalent in nutritional value to the daytime meal they miss. See Federal Bureau of Prisons, *Chaplaincy Services Guidance for the Recognition of Holy Days Calling for Work Proscription, Public Fast and Observance* p.6 (Sept. 1, 2015), https://www.bop.gov/foia/docs/guidancememorandumonholydays2016-2018.pdf.

c.    In contrast, RIDOC provide Plaintiffs two meals a day during Ramadan and did not provide Plaintiffs with any food to make up for the lunch that they miss. In doing so, RIDOC effectively reduced Plaintiffs' daily caloric intake by one-third for the entirety of the thirty days of Ramadan.

32.    *Second*, RIDOC served meals to Plaintiffs at times of day that required them to extend their fast by several hours each day.

a.    Under Muslim traditions, the morning meal *suhoor* is served just before dawn, and the evening meal *iftar* is served just after sunset.

6

b.  Many other prisons accommodate observance of Ramadan by providing Muslims with meals at appropriate times. *See, e.g., Childs v. Webster*, No. 22-CV-256-JDP, 2024 WL 1619345, at *4 (W.D. Wis. Apr. 15, 2024) ("As part of preparations for Ramadan in 2023 . . . defendant Webster distributed a memo to SCI staff explaining the timing of Ramadan meal bags in relation to the Fajr and Maghrib prayer times and directing staff to use a prayer schedule that she had downloaded to an internal computer network drive."); *Boyd v. Lehman*, No. C05-0020-JLR, 2006 WL 1442201, at *9 (W.D. Wash. May 19, 2006) (after prison officials learned that "arrangements made for the evening meal were not acceptable" because they were serving the evening meal to Muslim inmates too early, prison officials "worked to find a solution").

c.  However, RIDOC officials delivered the pre-dawn meal to Plaintiffs between 2:00 a.m. and 3:00 a.m., and corrections staff required Plaintiffs to eat the meal during that time. If Plaintiffs tried to save the meal so that they could start the day's fast at the correct time, corrections officers would discard the meals. As a result, Plaintiffs could only observe Ramadan by starting to fast several hours earlier than required by Muslim traditions.

d.  RIDOC officials also lengthened the duration of the fast by serving the evening meal late. Under Muslim traditions, *iftar* is traditionally served just after sunset, but RIDOC officials provided dinner to Plaintiffs an hour later.

e.  Midway through Ramadan in 2024, after complaints were made that Defendants were preventing Muslims from breaking the fast at sunset, RIDOC officials began giving Muslims in HSC one date apiece so that they could symbolically break the fast at the designated time for *iftar* each day. However, Defendants did not change their

7

practice of giving Plaintiffs the evening meal an hour after sunset, which required that Plaintiffs go hungry for an extra hour longer than Islam requires.

f.        By serving the pre-dawn meal between 2:00 and 3:00 a.m., and by serving the evening meal an hour after sunset, RIDOC required Plaintiffs to extend their fast by up to four hours each day in order to observe Ramadan.

g.        Because of both the extension of the fast and lack of adequate nutrition, Plaintiffs lost weight, experienced hunger pains, and were pressured to break their religious obligations.

33.    *Third*, RIDOC prohibited Plaintiffs and other Muslims in HSC from breaking their fast together during Ramadan, despite repeated requests to do so.

a.        The *maghrib* prayer, a required daily prayer to be said at sunset, is typically said communally before *iftar*. *Iftar* is traditionally a community gathering.

b.        Other prisons accommodate Ramadan by allowing Muslims to recite the *maghrib* prayer, break the fast, and celebrate *iftar* together.

c.        RIDOC, however, refused to allow Plaintiffs and other Muslims in HSC to observe *iftar* and *maghrib* together.

d.        RIDOC punished Plaintiffs when they attempted to break the fast together. On March 12, 2024, Plaintiff Brockman gave a piece of candy to Plaintiff Wilson to break the fast, and they were each charged with violating RIDOC rules. Each was subsequently punished with twenty days of disciplinary confinement for this attempt to practice their religion.

34.    Plaintiffs have filed multiple grievances regarding the observance of Ramadan. However, these grievances have been unanswered or returned unprocessed.

**B.      RIDOC Does Not Allow Plaintiffs and Other Muslims in HSC to Hold *Any* Communal Prayer**

35.      It is not only during Ramadan that RIDOC denies Plaintiffs and other Muslims in HSC the opportunity to participate in communal prayer. RIDOC never allows them to do so.

36.      Weekly communal prayer plays an important role in Muslim religious practices. It creates a sense of community and is understood to be more rewarding than offering prayer alone. The Prophet says, "The prayer in congregation is twenty-seven times superior to the prayer offered by person alone."

37.      The weekly communal prayer is called *Jumu'ah* and occurs every Friday.

38.      Communal prayer is important to Plaintiffs because it allows them to be united with fellow Muslims and to express their faith together.

39.      Since Plaintiffs were assigned to the HSC, RIDOC has *never* provided them any opportunity to share communal prayers with each other and other Muslim inmates.

40.      Plaintiffs have repeatedly requested communal Muslim prayers, but Defendants have repeatedly rejected those requests.

41.      When Muslim prisoners have tried to gather for prayer in the yard or other common areas, corrections officers have ordered them to stop or face punishment.

42.      The denial of communal prayer services for Muslim inmates in HSC is especially glaring because RIDOC allows Christian inmates to congregate and pray together. Each week, Plaintiffs have heard an announcement on the intercom for Christian services, but there has never been a religious service allowed for Muslim inmates.

**C.      RIDOC Denies Plaintiffs and Other Muslims in HSC Regular Access to an Imam**

43.      An imam is a Muslim spiritual leader who guides the community by leading prayers, interpreting the Quran, providing religious guidance on personal matters, and acting as a

9

link between the people and Allah. An imam offers a source of knowledge and support in Muslims' daily lives, acting as a trusted advisor on faith and practice.

44.    Regular access to an imam is important to Plaintiffs because an imam guides them in their faith and offers spiritual support and counseling.

45.    RIDOC employs an imam, who is an institutional chaplain within the meaning of RIDOC policy and is therefore a "contract employee" of RIDOC. RIDOC Policy 240-RICR-10-00-2 § 2.4(H). The imam visits all of the RIDOC facilities, including HSC.

46.    Although the imam visits HSC, his visits are infrequent and sporadic, and RIDOC only allows him to visit inmates in certain cell blocks. Muslim prisoners who are held in "E Mod" or "F Mod" – which house inmates on RHP Step 1 – have no access to the imam, while inmates held in other cell blocks, including "A mod" and "B Mod," see the imam infrequently.

47.    Over the past year, Plaintiffs have repeatedly submitted requests to see an imam, but Defendants have denied or ignored these requests.

48.    Despite his multiple requests, Plaintiff Wilson has only seen the imam once since his arrival at HSC in 2023. He saw the imam for the first time in January 2025. He ran into the imam in passing that day, and the two spoke briefly. The imam did not come to HSC to visit Plaintiff Wilson or other inmates in his mod that day.

49.    Plaintiff Brockman has also repeatedly sought to see an imam, but he has only been allowed to see the imam once or twice throughout his time at HSC when he was housed in B Mod and not when he was held in more restrictive mods.

50.    Plaintiff Cooper has similarly seen the imam only sporadically throughout his time at HSC, and that was only when he was housed in A or B Mod. Most recently, he saw the imam in late January 2025.

51.     Plaintiff Hicks had not seen the imam for a year and a half while at HSC. He saw the imam for the first time in late January 2025 after being moved to B mod. He did not see the imam at all when he was housed in more restrictive cell blocks.

52.     The lack of access to a religious leader significantly burdens each of Plaintiffs' ability to practice their religion.

53.     The denial of access to clergy violates RIDOC policies, which provide that facility chaplains shall make weekly visits to prisoners held in the RHP program in the HSC. See Restorative Housing Program, 12.28 DOC RHP Conditions of Confinement IV(E)(1)(e)(9).

54.     RIDOC policy also makes clear that even prisoners at Step 1, the most restrictive level of the RHP program, who have the fewest privileges, are entitled to meet with a chaplain. Restorative Housing Program, 12.28 DOC RHP Conditions of Confinement IV(H)(1); *see also* RIDOC Policy 240-RICR-10-00-2 § 2.3 ("Inmates are not denied personal contact with accredited representatives of their respective faiths.").

55.     The denial of access to clergy for Plaintiffs contrasts with the treatment of prisoners of different faiths, including Christian prisoners, who are allowed to see their chaplains weekly, even without submitting an advance request to do so.

56.     Plaintiffs have filed multiple grievances regarding the denial of access to an imam. However, these grievances have been unanswered or returned unprocessed. RIDOC has continued to deny Plaintiffs proper access to an imam.

### D.     Defendants Deny Plaintiffs and Other Muslims in HSC Access to Necessary Religious Items

57.     Plaintiffs have been denied access to traditional Muslim religious items necessary for prayer, including prayer rugs and prayer cloths.

58.     Plaintiffs have sought to obtain *sajjada*, a prayer rug that provides a clean space for Muslims to pray on the ground. Plaintiffs believe using a prayer rug is necessary, as it provides them with the proper space to connect with Allah.

59.     RIDOC policies allow Muslim prisoners to obtain prayer rugs but they are not available at the commissary and they cannot be ordered through catalogs. Instead, prayer rugs can only be obtained through the imam.

60.     Because they do not have regular access to an imam, Plaintiffs Hicks and Wilson have been unable to obtain a prayer rug.

61.     Plaintiffs have also been denied the ability to obtain traditional Muslim garments, or prayer cloths, sometimes referred to as *thaubs* or *abayas*, which are loose-fitting garments worn during prayer. Prayer cloths allow Muslims to express their culture and symbolize their devotion and respect to Allah during prayer or other ceremonial gatherings. The garments symbolize respect and modesty. RIDOC does not allow Muslim inmates to obtain prayer cloths.

62.     Plaintiffs have filed multiple grievances regarding the denial of access to the religious items. However, these grievances have been unanswered or returned unprocessed. RIDOC continues to deny Plaintiffs access to religious items.

63.     As a result of the Defendants' acts, Plaintiffs have suffered and will continue to suffer daily distress and impairment of their right to exercise their religion freely, for which they have no adequate remedy at law.

## CLAIMS FOR RELIEF

### CLAIM ONE
*Violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA) by Interfering with Observance of Ramadan*
**(Against All Defendants)**

64.　Paragraphs 1 through 65 are incorporated herein as if restated in full.

65.　Defendants have denied and continue to deny Plaintiffs the ability to practice their religion preventing them from observing Ramadan.

66.　This denial substantially burdens Plaintiffs' religious exercise in violation of RLUIPA.

67.　RLUIPA provides:

**(a) In general**
Government shall not substantially burden a person's exercise of religion

even if the burden results from a rule of general applicability, except as

provided in subsection (b).

**(b) Exception**

Government may substantially burden a person's exercise of religion only

if it demonstrates that application of the burden to the person–

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling

governmental interest.

42 U.S.C. § 2000cc-1.

68.　Plaintiffs are each a "person" as that term is used in RLUIPA. 42 U.S.C. § 2000cc1(a) and 42 U.S.C. § 1997(3).

13

69.     Plaintiffs are confined to the ACI, which is an "institution," as defined in 42 U.S.C. § 1997(1).

70.     Defendant RIDOC is a "government" as that term is defined in RLUIPA, 42 U.S.C. § 2000cc-5(4)(A)(i)-(iii), and each of the individual Defendants are agents of RIDOC.

71.     Under RLUIPA, RIDOC may not impose a "substantial burden" on the "exercise of religion" unless it can demonstrate that the burden is the "least restrictive means" to advance a "compelling governmental interest."

72.     For adherents of Islam, observance of Ramadan is an "exercise of religion" as that term is used in RLUIPA.

73.     Each of Defendants' restrictions on Plaintiffs' observance of Ramadan imposes a "substantial burden" on Plaintiffs' "exercise of religion."

74.     Defendants cannot satisfy their burden of demonstrating that the substantial burdens on Plaintiffs' religious exercise are the "least restrictive means" to achieve a "compelling governmental interest."

**CLAIM TWO**
***Violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA) by Denying Plaintiffs Congregate Prayer, Access to an Imam, and Religious Items***
**(Against All Defendants)**

75.     Paragraphs 1 through 76 are incorporated herein as if restated in full.

76.     Defendants have denied and continue to deny Plaintiffs the ability to practice their religion by (a) denying them access to weekly communal prayer, (b) denying them regular access to an imam, and (c) denying them access to needed religious items.

77.     Each of these denials substantially burdens Plaintiffs' religious exercise in violation of RLUIPA. 42 U.S.C. § 2000cc-1.

78.    For adherents of Islam, weekly communal prayer, regular meetings with an imam, and having religious items are each an "exercise of religion" as that term is used in RLUIPA.

79.    Each of Defendants' restrictions on these practices imposes a "substantial burden" on Plaintiffs' "exercise of religion."

80.    Defendants cannot satisfy their burden of demonstrating that the substantial burdens on Plaintiffs' religious exercise imposed by Defendants are the "least restrictive means" to achieve a "compelling governmental interest."

## CLAIM THREE
### *Violation of the Equal Protection Clause of the Fourteenth Amendment*
**(Against Defendants SALISBURY, CORRY, MASIELLO, and WEINER)**

81.    Paragraphs 1 through 82 are incorporated herein as if restated in full.

82.    Defendants Salisbury, Corry, Masiello, and Weiner have denied and are continuing to deny Plaintiffs the equal protection of the laws based upon their Muslim faith, in violation of the Equal Protection Clause of the Fourteenth Amendment, which is actionable pursuant to 42 U.S.C. § 1983.

83.    Defendants have denied Plaintiffs and other Muslims in the HSC access to clergy and the ability to participate in communal prayer, while allowing Christian prisoners in HSC to meet with clergy every week and attend weekly religious services.

84.    The discriminatory treatment of Plaintiffs because of their religion violates the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983.

## **PRAYER FOR RELIEF**

Plaintiffs respectfully request that this Court grant the following relief:

A.    A declaratory judgment that all Defendants have violated and are violating Plaintiffs' rights under RLUIPA and that Defendants Salisbury, Corry, Masiello, and Weiner have

15

violated and are violating Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983.

      B.      A temporary restraining order, preliminary injunction, and after a hearing on the merits, a permanent injunction ordering Defendants to allow Plaintiffs to observe Ramadan, engage in weekly communal prayer with other Muslims, meet regularly with an imam, and obtain needed religious items.

      C.      An award of reasonable attorneys' fees and costs of litigation, pursuant to 42 U.S.C. § 1988 and other applicable law; and

      D.      Any further relief the Court deems just and proper.

Respectfully submitted,

DIAMOND WILSON, KARLTON BROCKMAN, NATHAN COOPER, and LORENZO HICKS

By their attorneys

/s/ Jared A. Goldstein
Jared A. Goldstein (Bar No. 10715)
Kailey Chalmers, Law Student Counsel
Kaiya Letherer, Law Student Counsel
Prisoners' Rights Clinic
Roger Williams University School of Law
1 Empire Plaza, Ste 435
Providence, RI 02903
(401) 276-4880
Jgoldstein@rwu.edu

/s/ Lynette Labinger
Lynette Labinger (Bar No. 1645)
128 Dorrance St., Box 710
Providence, RI 02903
(401) 465-9565
ll@labingerlaw.com
Cooperating counsel, ACLU Foundation of RI

16

## UNITED STATES DISTRICT COURT

## FOR THE

## DISTRICT OF RHODE ISLAND

**DIAMOND WILSON, KARLTON
BROCKMAN, NATHAN COOPER, and
LORENZO HICKS**

      **Plaintiff,**

v.

**RHODE ISLAND DEPARTMENT OF
CORRECTIONS; WAYNE
SALISBURY, Director, Rhode Island
Department of Corrections; LYNNE
CORRY, Warden, The High Security
Center Facility; RACHEL BRAY, Deputy
Warden, The High Security Center Facility;
and BARRY WEINER, Assistant Director
for Rehabilitative Services**

      **Defendants.**

      :
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

## <u>VERIFICATION</u>

I, Diamond Wilson, hereby declare under penalty of perjury as follows:

1.      I am a Plaintiff in the above-captioned lawsuit.

2.      I bring this action on my own behalf.

3.      I have read the Complaint filed in the above-captioned action and it is true and

correct to the best of my knowledge, information and belief.

I, Diamond Wilson, hereby declare under penalty of perjury pursuant to 28 U.S.C.

§1746 that the foregoing is true and correct.

Executed on February 12th, 2025

_____
Diamond Wilson

# UNITED STATES DISTRICT COURT

## FOR THE

## DISTRICT OF RHODE ISLAND

DIAMOND WILSON, KARLTON
BROCKMAN, NATHAN COOPER, and
LORENZO HICKS

      **Plaintiff,**

v.

RHODE ISLAND DEPARTMENT OF
CORRECTIONS; WAYNE
SALISBURY, Director, Rhode Island
Department of Corrections; LYNNE
CORRY, Warden, The High Security
Center Facility; RACHEL BRAY, Deputy
Warden, The High Security Center Facility;
and BARRY WEINER, Assistant Director
for Rehabilitative Services

      **Defendants.**

## VERIFICATION

I, Nathan Cooper, hereby declare under penalty of perjury as follows:

1.      I am a Plaintiff in the above-captioned lawsuit.

2.      I bring this action on my own behalf.

3.      I have read the Complaint filed in the above-captioned action and it is true and correct to the best of my knowledge, information and belief.

I, Nathan Cooper, hereby declare under penalty of perjury pursuant to 28 U.S.C. §1746 that the foregoing is true and correct.

Executed on February 12, 2025

_Nathan E. Cooper_
Nathan Cooper

## UNITED STATES DISTRICT COURT

### FOR THE

### DISTRICT OF RHODE ISLAND

DIAMOND WILSON, KARLTON
BROCKMAN, NATHAN COOPER, and
LORENZO HICKS

      **Plaintiff,**

v.

RHODE ISLAND DEPARTMENT OF
CORRECTIONS; WAYNE
SALISBURY, Director, Rhode Island
Department of Corrections; LYNNE
CORRY, Warden, The High Security
Center Facility; RACHEL BRAY, Deputy
Warden, The High Security Center Facility;
and BARRY WEINER, Assistant Director
for Rehabilitative Services

      **Defendants.**

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

### VERIFICATION

I, Lorenzo Hicks, hereby declare under penalty of perjury as follows:

1.      I am a Plaintiff in the above-captioned lawsuit.

2.      I bring this action on my own behalf.

3.      I have read the Complaint filed in the above-captioned action and it is true and correct to the best of my knowledge, information and belief.

I, Lorenzo Hicks, hereby declare under penalty of perjury pursuant to 28 U.S.C. §1746 that the foregoing is true and correct.

Executed on February 12, 2025

_____
Lorenzo Hicks